COACH LEATHERWARE COMPANY, INC., Plaintiff,

v.

ANNTAYLOR, INC., Laura Leather Goods Ltd., A & R Handbag, Inc. and Ron's Elegance Center, Inc., Defendants.

No. 90 Civ. 3458 (KTD).

United States District Court, S.D. New York.

Nov. 8, 1990.

Amster, Rothstein & Ebenstein, New York City, for plaintiff; Daniel Ebenstein, of counsel.

Hertzog, Calamari & Gleason, New York City, for defendant AnnTaylor; James A. Beha, II, of counsel.

DeMaio & Hughes, New York City, for defendants Laura Leather Goods, Inc. and A & R Handbags, Inc.; Luigi P. DeMaio, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiff Coach Leatherware Company, Inc. ("Coach") commenced this action for trademark infringement and statutory and common law unfair competition against defendants AnnTaylor, Inc. ("AnnTaylor"), Laura Leather Goods, Inc. ("Laura"), A & R Handbag, Inc. ("A & R"), and Ron's Elegance Center, Inc. ("Ron's"), alleging that defendants produced certain knockoffs of known Coach leather handbags which are likely to cause and have caused confu-sion in the marketplace. 15 U.S.C. §§ 1051, 1125(a) (1982). Coach, pursuant to Fed.R.Civ.P. 65, seeks to enjoin the manufacture and sale by AnnTaylor, Laura, and A & R of the infringing handbag styles. Ron's has consented to being enjoined. AnnTaylor, Laura, and A & R move, pursuant to Fed.R.Civ.P. 56, for summary judgment dismissing the complaint. Both sides have agreed that a hearing for introduction of the evidence is unnecessary.

## FACTS

Coach is a New York corporation engaged in the design, manufacture, marketing, distribution, and sale of leather fashion products, including handbags, briefcases, and belts. Complaint ¶ 8. Marketed in upscale general and department stores throughout the United States, Coach creates an exclusive and expensive line of wares. Complaint ¶¶ 9–14; Frankfort Declaration ("Decl.") ¶ 8. In addition, Coach has a mail order business and catalogue. All of its products are sold exclusively under its own label. Frankfort Decl. ¶¶ 8–9. Its products are designed by an in-house staff and manufactured domestically. AnnTaylor, a prominent clothing company that also designs and manufactures handbags, shoes, belts, and other wardrobe accessories, is a wholly-owned subsidiary of AnnTaylor Holding, Inc., which is in turn owned by Merrill Lynch Co., Inc. Rule 9 Statement; AnnTaylor 3(g) ¶ 2. Laura and A & R are New York corporations engaged in the business of designing and manufacturing handbags as well. A & R is a Laura affiliate. Rule 9 Statement.

The instant controversy arises because Coach identified various companies producing identical reproductions of three of its handbags. Specifically, copies were found of the Coach "Dinky Bag," a small handbag with a narrow profile, incorporating a flap which extends to cover the entire face of the bag. The bag is suspended from an integrally stitched shoulder length strap and has single line stitching along the edges. The Dinky Bag includes an internal zippered pocket and is produced of glove

tanned leather. Frankfort Decl. ¶ 4, Exh. 2a. The second bag, a Duffel Sac is a large handbag incorporating a circular bottom, tapered sides and a leather strap bound to its top with solid brass hardware containing a unique design, and a single line of stitching. In addition, it contains an internal pocket. Frankfort Decl. ¶ 5, Exh. 2b. The third bag is a "Convertible Clutch" style, which is a larger version of the Dinky Bag, incorporating a narrow profile and a flap which extends to cover the entire face of the bag. The strap is mounted to the clutch using distinctive brass hardware. Frankfort Decl. ¶ 6, Exh. 2c. Coach's leather products are typically produced in full-grain cowhide. 3(g), Exh. G. The inside of the handbags apparently contains a branded registration number. Frankfort Deposition ("Depo.") 72–73.

Like all Coach bags, the three styles at issue in this matter incorporate a distinctive lozenge shaped leather tag suspended by a beaded brass chain. The tag, appearing on all Coach bags ("the Coach tag"), is suspended from a beaded brass chain with the name "Coach Leatherware" embossed on the tag itself. Frankfort Decl. ¶ 7. Although Coach's bags are not trademarked, the Coach tag is the subject of U.S. Trademark Registration number 1,242,098. Frankfurt Decl. ¶ 7, Exh. 3. Coach tags, alone, are recognized by the public, and are often stolen from the bags. In fact, one of Coach's catalogues includes the phrase: "It's not a Coach Bag without a Coach tag." Plaintiff's Reply to AnnTaylor's 3(g) Statement, ¶ 14. Moreover, Coach store managers warn security persons to prevent thefts of the tags themselves. AnnTaylor's bags, similar of type and style to the Coach bags, also contain a leather tag embossed with the AnnTaylor name. Because these and the other allegedly infringing handbags were selling at a substantial discount, Coach alleges that its market share was affected. Also, Coach avers that recognition of its bags in the marketplace was undermined.

## DISCUSSION

### A. PRELIMINARY INJUNCTION

■ Coach moves to preliminarily enjoin AnnTaylor, A & R, and Laura from emulating and recreating standard well-known Coach designs. Coach avers that because AnnTaylor, a retail chain of approximately 160 women's fashion stores located throughout the United States, is essentially replicating three of Coach's handbag designs, the Dinky Bag, Duffle Sac, and Convertible Clutch, including the distinctive leather tags and brass detailing attached to the bags, that injunctive relief is appropriate. Flaherty Depo., at 9. The standard for granting injunctive relief in the Second Circuit mandates a showing of irreparable harm and either: (1) a likelihood of success on the merits; or (2) "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979). Coach claims entitlement to an injunction even though its bags are not individually trademarked except for the detachable tag.

■ The most vital prerequisite for the issuance of a preliminary injunction is a showing that without such equitable relief, the movant is likely to suffer irreparable harm before a decision on the merits can be rendered. *Citibank, N.A. v. Citytrust,* 756 F.2d 273, 275 (2d Cir.1985) (citing 11 C. Wright & A. Miller, Federal Practice and Procedure § 2948 at 431 (1973)). "To establish irreparable harm, plaintiffs must demonstrate 'an injury that is neither remote nor speculative, but actual and imminent.'" *J. Richard Ryan v. VHA Enterprises, Inc., Aetna Life Insurance Co. and Voluntary Hospitals of America, Inc.,* [1990 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 95,244, 1990 WL 58969 (S.D.N.Y. May 1, 1990). Coach falls short of meeting its burden to show imminent injury.

Although the injury Coach may suffer is real, inter alia, loss of good will in its business, the fact that a preliminary injunction was on motion instead of by Order to Show Cause is telling. Indeed, Coach had avenues in which to expedite the procedure to obtain a preliminary injunction. Gener-

ally, choosing the slow road to relief, rather than pursuing other avenues for expedited relief, indicates that the harm may not have been irreparable.

## B. SUMMARY JUDGMENT

■ In moving for summary judgment, AnnTaylor avers that a competitor may emulate a rival's unpatented or untrademarked product design so long as the competitor clearly labels his own product, does not use confusingly similar trade names or logos, and does not parody the overall presentation and packaging of the product, i.e., the trade dress employed by the rival company.

Nonetheless, in support of its motion for an injunction, Coach avers that it is likely to succeed on the merits because its bags, incorporating distinctive styling and detail, are recognizable to the consuming public, essentially having acquired a secondary meaning in the marketplace. I agree. Section 43(a) of the Lanham Act, in pertinent part, states:

> Any person who, on or in connection with any goods or services, ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, ... which (1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with the goods, services, or commercial activities by another person,.... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a) (1988).

■■ This section allows the manufacturer to claim entitlement to rights in the trade dress of its product. Trade dress can encompass the total image of a product, including its size, shape, color combinations, texture, graphics, etc. *See Stormy Clime Ltd. v. Progroup, Inc.*, 809 F.2d 971, 974 (2d Cir.1987). To succeed on a claim for infringement of trade dress, the plaintiff must show only that the "trade dress of its product has acquired a secondary meaning in the marketplace and the design of the competitor's product is confusingly

similar to that of the plaintiff's product." *Id.* Secondary meaning in the marketplace is established when the purchasing public associates a product's trade dress with a single producer or source rather than simply with the product itself. *Le Sportsac, Inc. v. K Mart Corporation*, 754 F.2d 71, 78 (2d Cir.1985).

■ AnnTaylor and Laura aver that because the designs are "classic," as described by Coach in its catalogues, that the designs and handbag configurations are not unique, but functional, and therefore within the public domain. Only unique features of a design may be considered to be trade dress. If the styles were so classic and basic that there would be no way to produce like products without complete emulation of the existent design, then the design would not be protectable under the Lanham Act. *See Warner Bros. Inc. v. Gay Toys Inc.*, 724 F.2d 327 (2d Cir.1983). A product feature is "functional" and unprotectable as trade dress only if the accused party can demonstrate that the feature "is essential to the use or purpose of the article or ... affects the cost or quality of the article." *Le Sportsac, Inc. v. K Mart Corporation*, 754 F.2d 71, 76 (2d Cir.1985). "[T]he fact that an item serves or performs a function does not mean that it may not at the same time be capable of indicating sponsorship or origin, particularly where the decorative aspects of the item are nonfunctional." *Warner Bros. Inc.*, 724 F.2d at 332 (quoting *Dallas Cowboy Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 204 (2d Cir.1979)).

In the instant case, the distinctive configuration of each of the three Coach products at issue resides in the overall design, silhouette, size, leather, hardware, fittings, and other features of the product. While found in these handbags are elements which perform a useful purpose, many of the elements are multi-functional or nonfunctional and serve to identify origin. Any one of these features could be replaced with innumerable other equivalent features which would make the product equally functional. For example, I find that the AnnTaylor bags copy distinctive

styling, leather tannage, component layout, exterior binding stitching, and configuration and placement of hardware used in the Coach Bags. In addition, AnnTaylor's rendition of the Coach bags contain a lozenge-shaped leather tag suspended from the handbag strap by a beaded brass chain. AnnTaylor's assertion that the tag was not of like shape to the Coach tag is unpersuasive. The difference in the tags is minimal. Moreover, the tags have come to be associated with the Coach name, regardless that AnnTaylor's products embossed the tag with its name. I find, therefore, that emulation of the Coach bags down to the purely non-functional identifying embossed leather tag which is suspended from the handbag strap, indicates knockoff copying of trade dress far beyond the mere "classic" or "functional."

Moreover, Laura's claims that no manufacturer could produce a ladies clutch or bucket bag in cowhide and not make their product similar to plaintiff's product, is belied by the evidence submitted in support of the preliminary injunction, namely, several examples of handbags different in style, yet, like in idea and non-infringing of Coach's product. *See* Levy Decl., Exhs. A–2, A–4, A–5, A–6, A–7, A–10, B–2, B–3, B–4, B–5, B–8. I find that these submissions, produced by outside parties, purchased in the open marketplace, and submitted for comparative purposes, show that there exists alternative designs to the three bags at issue which essentially perform the same function. The submissions defy AnnTaylor's, Laura's, and A & R's arguments concerning the issue of functionality; there is more than one way to produce the styles of handbags at issue.

Additionally, AnnTaylor, Laura, and A & R claim that, with regard to the Duffle Sac, the spacing of the eyelets on the shoulder strap are slightly different, the thickness in the hasp in the buckle is not the same and the overall width of the bags differ. To my eye, none of these differences matter in terms of the whole of the two products. The overall appearances of the products are uncannily similar. *See Le Sportsac, Inc. v. K Mart Corp.,* 754 F.2d 71, 76 (2d Cir.1985) (defendant misconceives scope of appropriate inquiry when, looking at the component parts of the products, it fails to analyze the overall look of the products and their basic similarity.) Furthermore, when Laura's President Alexander Pobirsky was deposed, he was unable to distinguish, across a conference table, the differences between Coach and AnnTaylor's submissions. Certainly, he was as close to the products as a consumer in a department store. That Coach packages its products differently is of no moment for Coach's products are on open display in department stores just as AnnTaylor's are on display.

 Finally, AnnTaylor asserts because its label is prominently displayed, appearing in an obvious place on the handbags and in plain view to the consumer, that nullifies Coach's assertion that the bags are confusingly similar.[1] The law does not require that articles of clothing or accessories be open advertisement for the creator. For Lanham Act protection to abide, there need only be a trademark affixed at the time of purchase. Then, once purchased, even though the trademark is not obvious, the trade dress of the item, which is non-functional[2] is protected when the item is put to normal use. In sum, trademark protection begins once origin is

---

**1.** Coach conducted an independent survey to determine whether the consuming public is confused by AnnTaylor's rendition of the three bags at issue in this case. According to the results of these independent surveys, the consuming public did not discern any difference between the bags and often confused AnnTaylor's rendition for that of a Coach-made handbag. Over sixty percent of the number of people in the survey unequivocally identified the AnnTaylor product as Coach, which provides significant evidence of a likelihood of confusion.

**2.** For design elements to rise to the level of functionality, it must be established that, without copying, the defendants did not have an adequate range of alternative designs to compete with plaintiff. *See Wallace International Silversmiths, Inc. v. Godinger Silver Art Co., Inc.,* 916 F.2d 76 (2d Cir.1990). As aforementioned, several design alternatives exist for each of the three infringing products.

made known to the ultimate purchaser. Protection does not end there, however, it endures while the item is put to normal use. Moreover, AnnTaylor's tag, although it contains AnnTaylor's name, is nonetheless confusingly similar to that of Coach's tag in look and feel. If, therefore, AnnTaylor's knockoffs are misrepresentative and/or confusingly similar in look as Coach bags then an infringement of the trade dress has occurred. AnnTaylor argues against this position, but, if the law were otherwise, the very protections afforded trademark owners would be impaired. In effect, AnnTaylor argues anyone could sell a knockoff with impunity provided, at the point of sale, it is disclosed as being a replica. Such is clearly not the law.

■ Lastly, "[a]n unfair competition claim based on New York common law does not require a showing of secondary meaning." *Inverness Corp. v. Whitehall Laboratories*, 1988 WL 100210, 1988 U.S. Dist. LEXIS 10350 at 3. The focus of the New York common law is on the likelihood of confusion. *Id.* Thus, the overwhelming showing of likelihood of confusion at bar is enough to defeat summary judgment in the defendants' favor and, instead, grant Coach summary judgment.

For the foregoing reasons, motions for summary judgment by AnnTaylor, Laura, and A & R are denied. After searching the record, I find the defendants liable for trade dress infringement and common law unfair competition.[3] Summary judgment is therefore granted in Coach's favor. Coach's motion for a preliminary injunction is, thus, moot. An inquest on damages in this matter will be conducted before a magistrate.

SO ORDERED.

---

3. Although Coach has not filed a formal cross-motion for summary judgment, district courts are empowered to search the record and, if warranted, grant summary judgment for the nonmoving party. *See Brandon v. Board of Education of Guilderland Central School District*, 487 F.Supp. 1219 (N.D.N.Y.1980), *aff'd*, 635

F.2d 971 (2d Cir.1980), *cert. denied*, 454 U.S. 1123, 102 S.Ct. 970, 71 L.Ed.2d 109, *reh'g denied*, 455 U.S. 983, 102 S.Ct. 1493, 71 L.Ed.2d 694 (1982); *Proctor & Gamble Ind. v. Proctor & Gamble Mfg. Co.*, 312 F.2d 181 (2d Cir.1962), *cert. denied*, 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963).