933 F.2d 162
 18 U.S.P.Q.2d 1907
 COACH LEATHERWARE COMPANY, INC., Plaintiff-Appellee,
v.
ANNTAYLOR, INC.; Laura Leather Goods, Ltd.; A & R Handbag,
Inc. and Ron's Elegance Center, Inc., Defendants,
AnnTaylor, Inc.; Laura Leather Goods, Ltd.; and A & R
Handbag, Inc., Defendants-Appellants.
 Nos. 1275, 1276, Dockets 90-9082, 90-9124.
 United States Court of Appeals,
Second Circuit.
 Argued April 5, 1991.
Decided May 15, 1991.
 
 Luigi P. De Maio, De Maio & Hughes, New York City, for defendants-appellants Laura Leather Goods, Ltd. and A & R Handbags, Inc.
 James A. Beha II, Hertzog, Calamari & Gleason, New York City, for defendant-appellant AnnTaylor, Inc.
 Daniel S. Ebenstein, Amster, Rothstein & Ebenstein, New York City (Anthony F. Lo Cicero, Steven M. Levy, Amster, Rothstein & Ebenstein, New York City, of counsel), for plaintiff-appellee Coach Leatherware Co., Inc.
 Before KAUFMAN, WINTER and MINER, Circuit Judges.
 IRVING R. KAUFMAN, Circuit Judge:
 
 
 1
 Copying women's designer handbags appears to be a convenient device for those seeking to ride fashion's often unpredictable waves. Abundant support for this observation is provided on Manhattan's Fifth Avenue where within close proximity of the flagship stores of Louis Vuitton, Gucci and Chanel, street vendors peddle imitations of these familiar designs. More confusing, and thus more troublesome, is the sale of copies by respected retailers. At the heart of this case is just such a circumstance--the sale of imitation Coach Leatherware Company, Inc. ("Coach") handbags by the AnnTaylor, Inc. ("AnnTaylor") chain of retail stores. At issue is the potential for consumer confusion caused by this situation.
 
 
 2
 In an effort to maintain its market share and its preferred status among customers, Coach instituted this action against appellants AnnTaylor, Laura Leather Goods, Inc. ("Laura") and A & R Handbag, Inc. ("A & R") for trademark infringement pursuant to section 43(a) of the Lanham Act and for unfair competition under New York State common law. Coach alleged that appellants had produced limitations of its distinctive leather handbags in a manner likely to cause confusion in the marketplace. Following Coach's motion for a preliminary injunction and appellants' cross-motion for summary judgment, Judge Duffy, sua sponte, granted summary judgment in favor of the nonmoving party, Coach. See Coach Leatherware Co. v. AnnTaylor, Inc., 751 F.Supp. 1104 (S.D.N.Y.1990). In addition, he enjoined appellants from substantially emulating any of Coach's more than fifty handbag designs. We believe, however, the record does not support the grant of summary judgment regarding those unregistered aspects of Coach's products. Accordingly, we affirm in part, reverse in part and remand for further proceedings consistent with our decision.
 
 I. Background
 
 3
 We need discuss only those facts and prior proceedings relevant to the disposition of this appeal. Some contextual detail, however, is unavoidable because of the complex nature of trademark infringement claims.
 
 
 4
 Coach, a New York corporation, has been engaged in the design, manufacture, marketing, distribution and sale of high quality, leather fashion products for approximately fifty years. Coach products are sold exclusively under its own label and are marketed in about fifty Coach-owned stores, in clearly designated Coach displays situated in expensive department stores and through Coach mail order catalogues.
 
 
 5
 AnnTaylor, a prominent retailer of quality women's apparel, is a wholly-owned subsidiary of AnnTaylor Holding, Inc., which in turn is owned by Merrill Lynch Co., Inc. AnnTaylor, like Coach, considers its market to consist of the stereotypical successful career women. Presently, the more than 160 AnnTaylor stores are located primarily in upscale malls, exclusive thoroughfares, and specialty retail centers. Laura, and its affiliate, A & R (collectively "Laura"), are also New York corporations engaged in the business of designing, manufacturing and selling handbags.
 
 
 6
 The instant litigation was initiated after Coach learned that some of its "classic" handbag designs, which have been part of its product line for the past fifteen years, were being copied and sold at AnnTaylor. AnnTaylor and Laura had allegedly replicated for sale three handbag styles made prominent by Coach: the "Dinky Bag"--a small handbag with a narrow profile, a flap that extends to cover the entire face of the bag and a shoulder length strap; the "Duffle Sac"--a large handbag with a circular bottom, tapered sides and a leather strap affixed to its top by solid brass hardware; and the "Convertible Clutch"--a larger version of the Dinky Bag. Though dissimilar in several significant respects, each Coach bag shares several features: all are produced from full-grain cowhide, contain exterior binding at external seams and incorporate brass hardware components. In addition, the inside of each bag contains a Coach registration number and various informational paraphernalia unique to Coach marketing tactics.
 
 
 7
 Over the years, Coach has attached to all of its handbags distinctive lozenge-shaped leather tags embossed with the name "Coach Leatherware." The tags, suspended from beaded brass chains, have become distinctive and valuable through Coach's promotional efforts and by virtue of its upscale reputation--Coach store managers report that the tags alone are often subject to theft. Though Coach bags are not themselves registered, the Coach tag is registered on the Principal Register of the United States Patent and Trademark Office. Apparently seeking to capitalize on the popularity of the Coach "look", the AnnTaylor handbags, in the Coach style, carry a similar leather tag embossed, however, with AnnTaylor's name and distinctive typeface.
 
 II. Proceedings Below
 
 8
 In May 1990, Coach filed a complaint alleging that Laura and AnnTaylor manufactured and sold handbags which essentially mimic design features made famous by Coach. Subsequently, the parties engaged in extensive discovery: both sides retained experts, took depositions, secured affidavits and exchanged documents. Coach went so far as to conduct a survey to determine whether consumers would confuse the AnnTaylor bags with Coach bags, even when the products were clearly labelled. AnnTaylor, though it has not elicited its own evidence to challenge the survey data, contends it should be given no weight since serious methodological flaws, including result-oriented questions, biased the results.
 
 
 9
 In August 1990, Coach moved preliminarily to enjoin appellants from replicating the Dinky Bag, the Duffle Sac, and the Convertible Clutch. Coach argued that it was likely to succeed on its trademark infringement and unfair competition claims, and contended that failure to issue an injunction immediately would result in irreparable loss of profits and goodwill.
 
 
 10
 In response, appellants cross-moved for summary judgment, alleging that Coach had not established a prima facie case of infringement. AnnTaylor averred that its clear labelling of the merchandise, its dissimilar trade name and logo, and its failure to parody Coach's unique product packaging, eliminated any likelihood that customers were confused as to the source of the product.
 
 
 11
 After searching the record and examining the submissions, Judge Duffy determined appellants' handbags were confusingly similar to those manufactured by Coach. Accordingly, in his November 8, 1990 Memorandum and Order, he denied appellants' summary judgment motion and instead granted summary judgment in favor of Coach, finding AnnTaylor and Laura liable, as a matter of law, for trade dress infringement and common law unfair competition. Coach's motion for a preliminary injunction was denied as moot.
 
 
 12
 The judgment permanently enjoined appellants from replicating any of Coach's approximately fifty handbag styles. Further proceedings concerning possible monetary relief were referred to Magistrate Judge Naomi Buchwald, pursuant to 18 U.S.C. Sec. 636(b)(1)(B).
 
 
 13
 Because we believe the district court's action prevented AnnTaylor and Laura from raising a genuine issue of material fact, we reverse the summary judgment insofar as it determines appellants' copying of the bags violates section 43(a) of the Lanham Act and the New York common law of unfair competition. We affirm, however, the grant of summary judgment with regard to the copying of the registered Coach tags. We find such replication violates section 32 of the Lanham Act which provides protection for registered marks.
 
 III. Summary Judgment
 
 14
 Though the principles governing summary judgment are by no means novel, they bear repeating for purposes of this appeal. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In reaching this determination, a court's responsibility is to assess whether there are any material factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986); Knight v. United States Fire Ins. Co., 804 F.2d 9, 11-12 (2d Cir.1986), cert. denied, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). "The judge's inquiry ... unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." Anderson, 477 U.S. at 252, 106 S.Ct. at 2512. Entry of summary judgment indicates that no reasonable jury could return a verdict for the losing party. See Issacharoff and Loewenstein, Second Thoughts About Summary Judgment, 100 Yale L.J. 73, 84-89 (1990).
 
 
 15
 In the instant proceeding, we are presented with the somewhat unusual circumstance where the district court has independently raised and granted a summary judgment motion in favor of the nonmoving party. Though not expressly authorized by Rule 56, this practice has become an accepted method of expediting litigation. See Celotex Corp. v. Catrett, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Sec. 2720, pp. 33-35 (1983). Somewhat more nebulous is the issue whether the moving party must be afforded an opportunity to respond to the court's sua sponte action.
 
 
 16
 The prevailing view in this Circuit is that a court need not give notice of its intention to enter summary judgment against the moving party. See, e.g., Abrams v. Occidental Petroleum Corp., 450 F.2d 157, 165-66 (2d Cir.1971), aff'd, 411 U.S. 582, 93 S.Ct. 1736, 36 L.Ed.2d 503 (1973); Local 33, Int'l Hod Carriers Bldg. & Common Laborers' Union of Am. v. Mason Tenders Dist. Council of Greater N.Y., 291 F.2d 496, 505 (2d Cir.1961). As Judge Harold Medina, a former professor of practice and procedure, stated with his characteristic acumen, "it is most desirable that the court cut through mere outworn procedural niceties and make the same decision as would have been made had defendant made a cross-motion for summary judgment." Local 33, Int'l Hod, 291 F.2d at 505. To determine whether the absence of a cross motion affected the result, an appellate court must ascertain whether the facts before the district court were fully developed so that the moving party suffered no procedural prejudice. See 10A Wright, Miller & Kane, supra, at 35.
 
 
 17
 When assessing the potential for prejudice, we are mindful that appellants' summary judgment motion was directed at proving that Coach, who had the burden of persuasion, could not establish a prima facie Lanham Act violation. See Celotex, 477 U.S. at 323-25, 106 S.Ct. at 2552-54. In their papers, AnnTaylor and Laura focused on undermining Coach's proof and did not necessarily include all evidence that might be presented at trial in their defense. Had Coach initially moved for summary judgment, instead of the more limited motion for a preliminary injunction, appellants would have been on notice to incorporate all rebutting evidence available to them.
 
 
 18
 This concern, however, does not necessarily undermine the propriety of the district court's action. Implicit in our earlier decisions is the recognition that despite varying burdens of production, the threat of procedural prejudice is greatly diminished if the court's sua sponte determination is based on issues identical to those raised by the moving party. Absent some indication that the moving party might otherwise bring forward evidence that would affect the court's summary judgment determination, failure to provide an opportunity to respond is not reversible error.
 
 
 19
 For these reasons, we believe AnnTaylor and Laura were not prejudiced by the grant of summary judgment related to Coach's registered hang tag. Appellants contended no material issues of fact prevented summary judgment in their favor on the Lanham Act claims. Moreover, they had significant incentive to put forward any compelling evidence in support of their summary judgment motion since the law prevented the district court from drawing favorable inferences on their behalf.
 
 
 20
 Despite this assessment, we are unable to conclude that appellants were provided with an adequate opportunity to defend against the grant of summary judgment prohibiting replication of the Coach handbag designs. Our views on this matter result from the differing evidentiary burdens imposed on those who seek to protect an unregistered, as opposed to a registered, mark. It is extremely difficult to establish, in a motion for summary judgment, that an unregistered design merits Lanham Act protection. See, e.g., Stormy Clime Ltd. v. Progroup, Inc., 809 F.2d 971, 977-78 (2d Cir.1987). Accordingly, because Coach failed to establish as a matter of law that appellants infringed upon its "trade dress," we reverse the grant of summary judgment pertaining to the unregistered elements of Coach's products.
 
 IV. Unregistered Trademark Infringement
 
 21
 Coach's federal claim is based on section 43(a) of the Lanham Act, 15 U.S.C. Sec. 1125(a) (1988), which provides a civil action in favor of those who believe they have been damaged, or are likely to be damaged, by the use of a "false designation of origin" on a good or service. Though enacted as part of the Trademark Act, this provision functions as a federal law of unfair competition for unregistered goods. Section 43(a) extends protection to a product's "trade dress"--the total image of a good as defined by its overall composition and design, including size, shape, color, texture, and graphics. See Stormy Clime, 809 F.2d at 974. In this case, the district court fairly determined Coach's "trade dress" resided in the general appearance of the handbags.
 
 
 22
 To prevail on a trade dress claim, the plaintiff must demonstrate that the product's appearance has acquired "secondary meaning"--the consuming public immediately identifies the product with its maker--and that purchasers are likely to confuse the imitating goods with the originals. See Wallace Int'l Silversmiths, Inc. v. Godinger Silver Art Co., 916 F.2d 76 (2d Cir.1990). Even if the plaintiff establishes these elements, the defendant may still avoid liability by demonstrating that the imitated features are "functional"--essential to the basic purpose the article is meant to serve.
 
 A. Secondary Meaning
 
 23
 The trade dress of a product attains secondary meaning when the purchasing public "associates" its design with a single producer or source rather than simply with the product itself. See Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844, 851 n. 11, 102 S.Ct. 2182, 2187 n. 11, 72 L.Ed.2d 606 (1982); Centaur Communications Ltd. v. A/S/M Communications, Inc., 830 F.2d 1217, 1221 (2d Cir.1987). The plaintiff is not required to establish that all consumers relate the product to its producer; it need only show that a substantial segment of the relevant consumer group makes this connection. See Centaur Communications, 830 F.2d at 1222.
 
 
 24
 Coach contends that compelling circumstantial and direct evidence confirms that consumers associate the Dinky Bag, the Duffle Sac, and the Convertible Clutch with Coach alone. Appellee claims its product awareness survey establishes customer recognition since a majority of respondents associated the AnnTaylor bags with Coach. It concludes that similarities in the aesthetic configuration of the products indicate purposeful replication and thus secondary meaning.
 
 
 25
 AnnTaylor and Laura respond that Coach has failed to establish, as a matter of law, that the consuming public identifies Coach as the sole source of the handbag designs at issue. They concede Coach handbags are widely recognized, but assert that the designs have become so commonplace that customers do not reflexively assume Coach produced them. Support for this proposition, appellants contend, can be found in Coach's advertising slogan--"It's Not a Coach Bag Without the Coach Tag" --which encourages consumers to distinguish its goods from those of its many imitators. If permitted to conduct additional discovery, they argue that at a minimum they would be able to raise a genuine factual dispute on this issue for trial. We agree.
 
 
 26
 Our cases make clear that proof of secondary meaning entails vigorous evidentiary requirements. See Thompson Medical Co. v. Pfizer Inc., 753 F.2d 208, 217 (2d Cir.1985). When attempting to resolve this essentially factual determination, we have assessed advertising expenditures, consumer studies, unsolicited media coverage of the product, sales success, attempts to plagiarize the mark, and length and exclusivity of use. Id. The careful weighing of evidence necessary to determining secondary meaning renders it an unlikely candidate for summary judgment. The case against summary judgment is even stronger where the opposing party has not been afforded an adequate opportunity to seek potentially favorable information. See Schering Corp. v. Home Ins. Co., 712 F.2d 4, 10 (2d Cir.1983).
 
 
 27
 With these principles in mind, we find Coach has failed to establish that a reasonable jury must conclude the overall design of its handbags have acquired secondary meaning. Though intentional copying constitutes persuasive evidence of consumer recognition, 20th Century Wear, Inc. v. Sanmark-Stardust Inc., 815 F.2d 8, 9-10 (2d Cir.1987), conscious replication alone does not establish secondary meaning. Moreover, production of the Coach consumer awareness survey does not satisfy the requisite evidentiary burden. Though we have found such surveys probative when granting summary judgment for a registered trademark owner, see Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Company, 799 F.2d 867, 869 & n. 1 (2d Cir.1986), we are especially reluctant to rely upon them when considering whether a product's unregistered trade dress has been infringed as a matter of law.
 
 
 28
 Though the failure to establish secondary meaning renders resolution of the section 43(a) claim premature, this does not conclude our inquiry. In particular, a showing of secondary meaning is not necessary to prove unfair competition under New York State common law, one of the grounds upon which the district court based its judgment. See Perfect Fit Indus., Inc. v. Acme Quilting Co., 618 F.2d 950 (2d Cir.1980), cert. denied, 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 71 (1982). To prevail on the state law claim, Coach need only demonstrate a likelihood of confusion.
 
 B. Likelihood of Confusion
 
 29
 AnnTaylor maintains that differences in packaging and in the size, shape, logo and name on the hang tag ensure that a consumer looking to purchase a Coach product is unlikely to be confused as to its source. Design variations in the imitation wares, including the spacing of the eyelets and the length of shoulder straps, the thickness in the hasp in the buckle and the overall width of the bags, are said to eliminate the consuming public's doubts as to maker. Appellants argue that the sophisticated consumers likely to purchase Coach products are informed enough to realize that handbags lacking a Coach registration number and the Coach name are not Coach products.
 
 
 30
 Coach responds that the district court's visual inspection was highly probative and largely conclusive of customer confusion. It argues the virtual identity in overall appearance, combined with other significant evidence, including the inability of Laura's President to distinguish across a conference table the differences between Coach and AnnTaylor submissions, would necessarily lead a rational trier of fact to conclude these products were likely to confuse consumers as to manufacturer.
 
 
 31
 We conclude that Coach has not presented sufficient convincing evidence to prevail on summary judgment. Similarity in overall appearance alone cannot establish source confusion as a matter of law. Nor is the addition of the anecdotal evidence and the consumer awareness survey dispositive. After drawing all reasonable inferences in favor of appellants, we are unable to conclude Coach has established that AnnTaylor and Laura engaged in unfair competition under New York state law.
 
 V. Registered Trademark Infringement
 
 32
 Despite Coach's failure to prove section 43(a) or New York state unfair competition liability on summary judgment, we find it has established infringement of its registered hang tags. Though Coach has not expressly pleaded a cause of action under section 32 of the Lanham Act, 15 U.S.C. Sec. 1114, it seeks in its complaint a permanent injunction preventing "the use of any ... symbol, representation, description or designation which is likely to create the erroneous impression that defendants' goods emanate from Coach ... or are otherwise authorized by Coach." We read this broad request for relief to include protection of its tags.
 
 
 33
 When assessing the protectable nature of a registered trademark, we first consider its strength. The four basic classifications, arranged from least to greatest degree of protection accorded, are: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. See Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9 (2d Cir.1976). The inherently distinctive shape and composition of the Coach hang tag leads us to conclude the mark is a fanciful one. This determination, which is supported by registration on the federal Principal Register, eliminates the trademark owner's need to prove secondary meaning. See J. McCarthy, Trademarks and Unfair Competition, Secs. 7:31, 11:3 (2d ed. 1984). Accordingly, to prevail on its section 32 claim, Coach need only establish a likelihood of confusion as to its registered mark. See Lois Sportswear, 799 F.2d at 871.
 
 
 34
 Presumptions of differing weight govern determination of the likelihood of confusion issue with regard to registered trademarks as opposed to unregistered trade dress. When engaging in this inquiry, registered marks are "entitled to a liberal application of the law." Lois Sportswear, 799 F.2d at 871. And, unlike unregistered trade dress claims, disposition by summary judgment is often appropriate where the protection of a registered trademark is at issue. See Barton, Summary Judgments in Trademark Cases, 75 Trademark Rep. 497, 525 (1985). Therefore, our conclusion that Coach has not proven a likelihood of confusion among the handbags does not pre-determine resolution of the claim regarding its hang tags.
 
 
 35
 We agree with Judge Duffy that "AnnTaylor's tag, although it contains AnnTaylor's name, is nonetheless confusingly similar to that of Coach's tag in look and feel." Coach Leatherware, 751 F.Supp. at 1109. This observation, coupled with the fact that the tags are affixed to almost identical products marketed towards the same consumer group establishes likelihood of confusion under section 32.[1] See Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492, 495 (2d Cir.), cert. denied, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961).
 
 
 36
 Recognition of Coach's sophisticated customer base does not necessarily bolster AnnTaylor's claim that confusion is unlikely. When rejecting a similar argument raised by a designer jeans manufacturer who had incorporated a pocket stitching pattern nearly identical to the one made famous by Levi Strauss & Co., we concluded that it is the sophisticated consumer "who is most likely to assume that the presence of appellee's trademark stitching pattern on appellants' jeans indicates some sort of association between the two manufacturers. Presumably it is these sophisticated jeans buyers who pay the most attention to back pocket stitching patterns and their 'meanings.' " Lois Sportswear, 799 F.2d at 875. Finally, Coach's failure to document significant evidence of actual confusion does not undermine the propriety of summary judgment. To warrant injunctive relief, plaintiffs were not required to establish unquestioned confusion but a mere likelihood of it; proof of real and precise confusion is necessary only for the recovery of monetary damages. As we have indicated, this determination awaits resolution of the proceedings now pending before Magistrate Judge Buchwald.
 
 
 37
 VI. The Functionality Defense to Section 43(a)
 
 
 38
 Though we need not consider appellants' affirmative defenses to section 43(a) of the Lanham Act because of our finding that summary judgment on the unfair competition issues is premature, we briefly discuss the doctrine of functionality to provide necessary guidance to the court below on remand. Trade dress protection does not extend to a product's functionality--those characteristics of the product which are essential to its purpose or use. See Wallace Int'l, 916 F.2d at 81; Stormy Clime, 809 F.2d at 977. Basic Lanham Act principles dictate that an owner may not use a trademark to circumscribe the flow of useful ideas and designs in the marketplace. See Note, The Problem of Functional Features: Trade Dress Infringement Under Section 43(a) of the Lanham Act, 82 Colum.L.Rev. 77, 79 (1982).
 
 
 39
 Judge Duffy, however, held as a matter of law that appellants' functionality defense was meritless, since the three Coach handbags are distinctive in their overall design and composition. He determined that many of the component parts, such as the distinctive lozenge-shaped leather tag, are purely ornamental and serve primarily to signify origin. Moreover, he found it possible to produce acceptable variations of the Coach styles. Based on these conclusions, the court proceeded to issue expansive relief, enjoining appellants from copying any Coach handbag.
 
 
 40
 Though Judge Duffy is undoubtedly correct that there are several ways to produce the handbag styles at issue without creating so great a likelihood of confusion for consumers, there is more to the functionality defense. Lanham Act protection does not extend to configurations of ornamental features which would significantly limit the range of competitive designs available. Wallace Int'l, 916 F.2d at 81. We are concerned that the grant of such broad relief chills competition excessively.
 
 
 41
 Coach produces from fifty to sixty different styles of handbags in various shapes and sizes. Though the scope of the injunction may reflect the court's desire to conserve judicial resources and stem relitigation of substantially similar infringement claims, we are skeptical that Coach could produce evidence sufficient to support such sweeping protection for its entire line of handbags. An extensive injunction prohibiting emulation of all types of Coach bags could have the unacceptable effect of removing non-infringing design innovations from the market. Similar concerns are raised by an injunction preventing replication of such elemental features as the size, shape, color and materials of Coach bags.
 
 VII. Conclusion
 
 42
 Regretfully, the body of law relating to the Lanham Act has developed into a tangled morass. See Brown, Design Protection: An Overview, 34 U.C.L.A.L.Rev. 1341, 1357 (1987). Courts struggling to move mountains often find they have only affected minuscule changes in trademark jurisprudence and occasionally have created their own likelihood of confusion. Be that as it may, our review of the record leads us to conclude that though Judge Duffy prematurely determined AnnTaylor and Laura have infringed upon Coach's unregistered trade dress in its handbags, permanent injunctive relief was properly extended to the registered Coach tag.
 
 
 43
 For the reasons we have stated, we affirm in part the grant of summary judgment, finding appellants' replication of the Coach tag violated Coach's trademark under section 32 of the Lanham Act. That part of the judgment finding appellants have infringed on Coach's trade dress under section 43(a) of the Lanham Act and the New York common law of unfair competition is reversed and remanded for further proceedings consistent with this opinion.
 
 
 44
 WINTER, Circuit Judge, concurring in part and dissenting in part:
 
 
 45
 I agree with my colleagues that we must reverse the sweeping relief ordered by the district judge in his sua sponte grant of summary judgment for the plaintiff. However, I respectfully dissent from the affirmance on entirely new grounds of a portion of that judgment. My disagreement is based on procedural as well as substantive concerns.
 
 
 46
 If procedural regularity is to be accorded even minimal observance, an appellate court should be extraordinarily cautious about issuing a sua sponte grant of summary judgment against a defendant on a fact-specific claim that the plaintiff did not make in its complaint or on appeal. On the merits, I agree with my colleagues that the overall similarity in appearance of the bags with hang tags does not, as a matter of law, create a likelihood of confusion as to source. Precisely because I agree on the trade dress issue, however, I do not agree that there is an infringement of a registered trademark as a matter of law. Ann Taylor's hang tags are different from Coach's registered tag, and, as Judge Kaufman notes, have a potential for creating confusion as to source only when attached to handbags that are substantially identical in appearance. The bags, however, are not part of the registered mark. Because it is the substantially identical handbags that create the confusion, if any, the issue is one of trade dress rather than trademark infringement--as Coach has insisted throughout.
 
 
 47
 * I address the procedural issues first. I agree with my colleagues on the strawman issue of whether a court has power to make sua sponte grants of summary judgment. When it appears that the sole issue in a case is a matter of law and the parties have no genuine disagreement on the material facts, a party cannot insist on the formality of a motion before a court acts. Nevertheless, sua sponte grants of summary judgment are rare and should be employed only when a court is absolutely sure that no issue of material fact exists. The need for caution is nowhere better demonstrated than in the actions of the district court in the instant matter. Ignoring the fine but important distinctions between the legal protections offered by design patents, copyrights and trademarks, and ignoring further the lack of any motion for judgment by Coach, the district court in effect gave Coach a monopoly against the world on all its handbag designs, whether or not they were involved in this case.
 
 
 48
 Regretfully, the majority does not draw from this extraordinary decision an appreciation of the need for caution but rather states the law concerning summary judgment in an erroneous way that encourages other district judges to ignore the Federal Rules of Civil Procedure. The majority thus states that when a party moves for summary judgment, a court may grant summary judgment against the moving party "absent some indication" that the moving party has undisclosed evidence relevant to the issue. This new rule is apparently based on the "significant incentive" a moving party has to put forth all its evidence when making its motion.
 
 
 49
 I disagree. When a defendant moves for summary judgment, it says only, "Plaintiff has insufficient evidence to make out a prima facie case." See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). It most assuredly does not say, "If plaintiff does have enough evidence to make out a prima facie case, I have no evidence to rebut it." Moreover, a party moving for summary judgment does not always have an incentive to offer rebuttal evidence. If the plaintiff can make out a prima facie case, the defendant will generally not have such overpowering rebuttal evidence that it will be entitled to judgment as a matter of law and thus will have little incentive to expose its defense to scrutiny that will aid its adversary in preparing for trial.
 
 
 50
 In the instant matter, the defendants' motion for summary judgment said only, "Coach cannot make out a prima facie case because it has no evidence of confusion as to source." Coach in effect replied, "To the contrary, we have evidence of confusion, including the overall identity in appearance. There is, therefore, sufficient evidence to allow a trier to find confusion as to source." Based on this exchange, the district court granted a monopoly to Coach on all of its handbag designs whether or not they were involved in this litigation. I would condemn rather than encourage this disregard for procedural regularity.
 
 
 51
 Moreover, when an appellate court sua sponte grants summary judgment for the plaintiff on a claim the plaintiff has never made--especially a fact-specific claim on which the plaintiff bears the burden of proof--it certainly does "cut through ... procedural niceties." Coach's complaint did not allege infringement of a registered trademark or even mention Section 32 of the Lanham Act. Instead, it asserted two claims: (1) copying of nonfunctional design features resulting in a likelihood of confusion as to source in violation of Section 43(a) and (2) common law unfair competition through the copying of distinctive trade dress and palming off. The district court based its grant of summary judgment solely on Section 43(a). On appeal, Coach never mentioned registered trademark infringement or even cited Section 32. Until the instant decision, therefore, this was solely a trade dress case. As my discussion of the merits indicates, I believe that observance of procedural regularity might have prevented an erroneous decision.
 
 II
 
 52
 Turning to the merits, I of course agree with my colleagues that the extraordinarily broad order of the district court is plain error. I also agree that summary judgment was inappropriate on the issues of secondary meaning and likelihood of confusion as to source resulting from similar trade dress. Ann Taylor's bags were on the market for months, but Coach has been unable to offer any substantial evidence of actual confusion as to source. That is to say, Coach has not shown that consumers who buy Ann Taylor bags believe they are buying bags produced by Coach rather than imitations of Coach bags produced by Ann Taylor. To be sure, the bags are remarkably--and not accidentally--similar in design, and each has a "lozenge" shaped (but different) hang tag. However, even identical appearances are insufficient by themselves to show confusion as to source as a matter of law, the indispensable element of a trademark claim. Unlike a design patent or copyright owner, a trademark claimant does not have an exclusive right to a design; its right is solely in protecting its identity as the source of its product. Ann Taylor thus has every right to copy Coach's bags so long as consumers know they are buying Ann Taylor bags. Whether confusion exists should be resolved at a trial.
 
 
 53
 My disagreement with the majority on the merits relates to its making and then adopting the claim of registered trademark infringement. It is correct that a failure to show likelihood of confusion under Section 43(a)--a trade dress claim--does not preclude assertion of a registered trademark claim. For example, if the tag used by Ann Taylor were identical to Coach's, including the use of the name "Coach," the fact that it was attached to shoes rather than handbags would not legitimate that use under Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492 (2d Cir.), cert. denied, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). However, Ann Taylor's hang tag is different. Ann Taylor's tag is oval-shaped whereas Coach's tag is rectangular. Their respective sizes are different. Moreover, each has a very different name and logo style embossed on it. I cannot, therefore, agree with my colleagues that the Ann Taylor tag infringes the Coach tag, because no reasonable trier of fact could find infringement if the two tags were hung on handbags with different appearances.
 
 
 54
 My colleagues seem to agree with this analysis, because they qualify their holding by noting that only when the hang tags are put on identical handbags--which are not part of the registered trademark--does a likelihood of confusion exist. By limiting their holding to circumstances involving items that are not part of the registered mark, however, they abandon the infringement theory only to embrace the very trade dress claim that is held in the immediately preceding section of Judge Kaufman's opinion not to have been established as a matter of law.
 
 
 55
 By converting a rejected trade dress claim into a registered trademark claim and then granting relief on the registered trademark claim on a trade dress rationale, the majority opinion completely blurs the distinction between these two legal theories. The closest precedent relied upon by the majority is Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Company, 799 F.2d 867 (2d Cir.1986). In that case--in which a registered trademark claim was made--we held that use of a back pocket stitching pattern that was part of a registered mark and had secondary meaning violated the Lanham Act where the products--ordinary jeans and designer jeans--were not identical and were sold in overlapping but different markets. The fact that the products were different was regarded as making confusion "more likely." 799 F.2d at 874. The present decision turns Lois Sportswear on its head. Secondary meaning has not been established as a matter of law for either the tags or the bags, and it is the identity of the products, which are not part of the registered mark, that supplies the critical element causing the supposed confusion. I believe, therefore, that the present decision will be the source of much future mischief.
 
 
 
 [1]
 These considerations are equally applicable to Laura. Laura affixes to its imitation Coach bags a cardboard tag, as well as a lozenge-shaped leather tag in the Coach style, when selling directly to the public. Moreover, when manufacturing bags for retailers, Laura embosses its leather tags with the retailer's name if the retailer requests it. Accordingly, Laura infringes the Coach trademark when it sells, either directly or indirectly, Coach knockoffs with the embossed, lozenge-shaped leather tags