**R.G.N. CAPITAL CORP., as agent for GRM Capital Inc., Plaintiff,**

v.

**YAMATO TRANSPORT USA, INC., and Sea–Land Service, Inc., Defendant.**

No. 95 Civ. 2647 (CSH).

United States District Court, S.D. New York.

Jan. 8, 1997.

Ross, Suhoff, Egert, Hankin, Madenbaum & Mazel, P.C., New York City, for Plaintiff; Brian K. Suhoff, Jeffrey B. Melzer, of counsel.

Marks & Murase, L.L.P., New York City, for Defendant Yamato Transport USA, Inc.; Lawrence M. Harnett, Diane C. Hertz, of counsel.

DeOrchis & Partners, New York City, for Defendant Sea–Land Service, Inc.; John A. Orzel, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge:

In this admiralty action arising out of the delayed delivery of goods carried by ocean transportation, the defendants shipowner and freight forwarder move for summary judgment pursuant to Rule 56, Fed.R.Civ.P.

### Background

The affidavits, exhibits and depositions submitted on these motions reveal the following facts.

Plaintiff R.G.N. Capital Corp. ("R.G.N."), suing as agent for GRM Capital Corp., alleges that at some time prior to January 27, 1994, R.G.N. contracted with defendant Yamato Transport USA, Inc. ("Yamato"), a freight forwarder, to arrange for the ocean

transportation of two containers filled with furniture materials. One container was to be loaded at the Port of New York and the second at the Port Tupelo, Mississippi. The containers were to be discharged at the port of Mariupol, Ukraine, with inland transportation to their ultimate destination, Donesk, Ukraine. R.G.N. says that it was under contract with a Ukrainian entity, Garo, Ltd. ("Garo"), to deliver these materials in the Ukraine not later than March 11, 1994. Affidavit of Boris Karapetyan at ¶ 5.

R.G.N. contends that at the time it retained Yamato's services and thereafter, R.G.N. impressed upon Yamato that the shipments had to reach their ultimate destination by March 11, 1994; that time was of the essence; and that Yamato gave R.G.N. assurances upon which R.G.N. relied. The witnesses for Yamato deny that such advice was given to them or that Yamato issued such reassurances.

Yamato recommended to R.G.N. that the two containers be carried on board vessels operated by defendant Sea–Land Service, Inc. ("Sea–Land"). R.G.N. agreed. Whatever the facts may be with respect to R.G.N.'s notice to Yamato of the time of delivery being of the essence, there is neither evidence nor claim that such notice was given to Sea–Land.

The complaint alleges that one container was loaded on board the vessel Sea–Land Achiever at the Port of Tupelo on or about January 27, 1994. The complaint further alleges that the second container was loaded on board the vessel Amerigo Vespucci at the port of New York on February 1, 1994.

Sea–Land issued ocean bills of lading upon the loading of the R.G.N. containers on board its vessels. The bill of lading covering the shipment from the U.S. Gulf on the Achiever is dated January 27, 1994. The bill of lading specifies New Orleans, Louisiana as the loading port, rather than Tupelo, Mississippi. The record does not reflect why New Orleans, rather than Tupelo, is identified as the port of loading, but the discrepancy does not appear to be material.

Sea–Land's bill of lading for the container shipped on board the Amerigo Vespucci is dated February 1, 1994. The loading port is designated as Elizabeth, New Jersey, which is in the greater port of New York.

Both bills of lading specify the port of Mariupol, Ukraine as the destination. Both bills of lading recite that the ocean freight is to be prepaid. The Achiever bill of lading recited that the freight charge totalled $4,385.00. The freight charges recited on the Amerigo Vespucci bill of lading totalled $3,320.00.

Both bills of lading provided in ¶ 13 that "[f]ull freight to the port of discharge named on the face of this document and all advance charges against the goods shall be considered completely earned on receipt of the goods by Carrier ..." Those paragraphs also provided that "Carrier shall have a lien on the goods, which shall survive delivery, for all charges due ..."

The Sea–Land vessels carried R.G.N.'s two containers from their respective ports of loading to the Port of Piraeus, Greece. Piraeus is the regular relay port utilized by Sea–Land in its feeder vessel service from Piraeus to Mariupol, Ukraine.

The record does not reflect when the Achiever and the Amerigo Vespucci arrived at Piraeus. Whenever that arrival occurred, Sea–Land did not immediately place R.G.N.'s containers on a feeder vessel for final carriage to the Ukraine. The reason is that Sea–Land had not yet received the freight charges for the ocean transportation as specified in the bills of lading. As noted, the bills of lading required that the freight be prepaid, that is to say, upon loading of the containers into the Sea–Land vessels. In that circumstance, Sea–Land exercised the lien conferred upon it by ¶ 13 of the bills of lading and kept the containers within its possession at Piraeus. Sea–Land was motivated to act in that fashion by its concern that if the containers were allowed to go forward to the Ukraine, the operation of Ukrainian regulations would have interfered with Sea–Land's ability to control the cargo. Affidavit of E.J. Witsman at ¶ 3.

Sea–Land did not receive payment for the ocean freight until Yamato forwarded a check dated March 28, 1994 in full payment

of the freight for both shipments. Following Yamato's payment of the freight, Sea–Land forwarded the two containers to the Ukraine for delivery. Witsman affidavit at ¶¶ 4–5.

R.G.N. says that under its contract with Yamato, Yamato was obligated to pay the ocean freight to Sea–Land and then include those charges in its statement to R.G.N. for services rendered after the containers arrived in the Ukraine. R.G.N. also contends that, as part of this understanding, Yamato would send invoices to R.G.N. so that R.G.N. would know the costs prior to arrival of the goods. Karapetyan affidavit at ¶¶ 22–23.

Yamato's account differs on this score. The then Yamato employee in charge of the shipments, Anita San Diego, says that she prepared invoices to R.G.N. dated February 4 and 7, 1994, and advised Karapetyan of R.G.N. by telephone that "R.G.N. needed to pay Yamato the freight charges so that Yamato could, in turn, pay Sea–Land." San Diego affidavit at ¶ 3. San Diego says further that she "personally handed the top two copies of the invoices (which are prepared in quadruplicate), along with the original bills of lading, to Mr. Karapetyan no later than March 4, 1994 when he visited Yamato's offices." *Id.* at ¶ 4. I infer from this latter statement that Yamato did not actually present the freight invoices to R.G.N. until March 4, 1994. As noted, the carrying vessels had departed the loading ports long before that.

After Yamato paid the ocean freight to Sea–Land on March 28, 1994, the containers eventually reached the Ukraine in April, 1994. By that time Garo had cancelled is contract with R.G.N. in respect of the furniture materials. R.G.N. had to sell the materials under distress conditions. It filed a complaint against Yamato and Sea–Land to recover actual and consequential damages, including indemnity for a claim made by Garo against R.G.N.

Both defendants now move for summary judgment.

## Discussion

Under Fed.R.Civ.P. 56(c), the moving party is entitled to summary judgment if the papers "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." On such a motion, "a court's responsibility is to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.,* 933 F.2d 162, 167 (2d Cir.1991) (citing *Knight v. U.S. Fire Insurance,* 804 F.2d 9 (2d Cir. 1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987)) (citation omitted). The responding party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The non-movant cannot 'escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts,' ... or defeat the motion through 'mere speculation or conjecture.'" *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (citations omitted). While the party resisting summary judgment must show a dispute of fact, it must also be a material fact in light of the substantive law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

I will discuss defendants' motions in inverse order.

### A. *Sea–Land's Motion for Summary Judgment.*

Sea–Land's motion for summary judgment dismissing the complaint as to it will be granted.

■ There is no evidence that Sea–Land was aware of the necessity of R.G.N.'s shipments reaching the Ukraine by a specific date, or that Sea–Land agreed to ensure that this would happen.

■ Quite apart from that, Sea–Land acted within the rights conferred upon it by the bills of lading when, following the failure to pre-pay the ocean freight, it exercised its lien upon the shipments at Piraeus. Sea–Land's explanation of why it chose to exercise its lien is entirely plausible.

R.G.N. contends that Sea–Land's off-loading of the containers at Piraeus constituted a "geographic deviation from the agreed upon route," Plaintiff's brief at 11, which renders Sea–Land liable for all resulting damages. In addition, R.G.N. claims that Sea–Land's exercise of its lien at Piraeus was unreasonable in the circumstances, an alternative basis for liability. As authority for these propositions, R.G.N. cites *Dow Chemical Pacific, Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329 (2d Cir.1986).

Sea–Land committed no deviation in this case, either geographical or by operation of law. As to the first point, Piraeus lies on a direct line from United States ports to Ukrainian ports on the Black Sea and the Sea of Azov. Moreover, the deposition testimony makes it plain that both Karapetyan of R.G.N. and Anita San Diego of Yamato, R.G.N.'s freight forwarder, were aware that Sea–Land services Ukrainian ports only by feeder service vessels from Piraeus to the Ukraine. San Diego deposition, Tr. 87; Karapeytan deposition, Tr. 38. In short, Sea–Land performed the voyages which the parties contemplated.

*Dow Chemical* bears no meaningful resemblance to the case at bar. The contemplated voyage in *Dow Chemical* was from United States and Canadian ports to Bombay, India. The Second Circuit, affirming the district court, held that the shipowner committed an unreasonable deviation when it directed the vessel to discharge the plaintiffs' cargoes at Cadiz, Spain, "a port at which it had not been scheduled to call," 782 F.2d at 332, for the purpose of discharging plaintiffs' cargoes at Cadiz rather than carrying them to Bombay. The shipowner's intention was to pick up several new cargoes at Cadiz, which it would then carry to Dubai, U.A.E., and to Kuwait." *Id.*

The shipowner contended during a bench trial that the underlying purpose of the deviation was the assertion of a lawful lien upon the cargoes. The district court rejected that contention, finding instead that the deviation was for the shipowner's "larcenous purpose,"

782 F.2d at 338, a finding which the court of appeals affirmed. The Second Circuit concluded that since the Carriage of Goods by Sea Act ("COGSA"), the governing statute, provides that a deviation for the purpose of unloading cargo is prima facie unreasonable, "and since a contemptuous or larcenous purpose is *ipso facto* unreasonable," the vessel's deviation to Cadiz "violated COGSA and breached the carriage contracts." *Id.*[1]

Sea–Land's conduct obviously bears no resemblance to that of the villainous shipowner in *Dow Chemical.* While in that case the Second Circuit left open the question of whether "an intended assertion of a lien on cargoes were a purpose that might ordinarily make a deviation 'reasonable' within the meaning of COGSA," 782 F.2d at 338, that question does not arise in the case at bar, since as noted an off-loading of R.G.N.'s containers at Piraeus was contemplated by the parties to the contract from the beginning.

Summary judgment will enter in favor of defendant Sea–Land.

### B. *The motion of Yamato for Summary Judgment.*

■ R.G.N.'s claim against Yamato presents genuine issues as to material facts which preclude summary judgment.

First, there is a dispute between these parties as to whether R.G.N. specifically advised Yamato that delivery of the containers at the Ukrainian port on or before a specified date was essential, whether Yamato gave R.G.N. specific assurances on that point, and whether R.G.N. reasonably relied upon those assurances. These disputes are clearly material to Yamato's liability.

Second, the parties dispute whether Yamato or R.G.N. were to prepay the ocean freight to Sea–Land prior or at the time of loading the containers on to the Sea–Land vessels.

The latter factual dispute is material because if, as R.G.N. asserts, Yamato agreed to pay the ocean freights in the first instance and bill R.G.N. for its services after delivery

---

1. The adjective "contemptuous" reflects the fact that the shipowner disregarded orders of two district judges, directing the shipowner to release

the cargoes at Cadiz or transship them to Bombay. *See* 782 F.2d at 333.

of the shipments in the Ukraine, Yamato breached the contract by failing to pay Sea–Land the freights until March 28, 1994. Yamato, ostensibly an experienced freight forwarder, should have foreseen that its failure to prepay the freights to Sea–Land could result in the latter's exercising its right under the bills of lading to lien R.G.N.'s cargo.

These contested and material issues also go to Yamato's liability, and are sufficient to preclude summary judgment for that defendant. In this opinion, the Court intimates no view with respect to the recoverable amount of R.G.N.'s damages in the event of a finding of liability on the part of Yamato.

### Conclusion

For the foregoing reasons, the motion of defendant Sea–Land Service, Inc. for summary judgment is granted. There being no just reason for delay, the Clerk of the Court is directed to enter judgment in favor of defendant Sea–Land Service, Inc. and against plaintiff R.G.N. Capital Corp., dismissing the complaint with prejudice. *See* Rule 54(b), Fed.R.Civ.P.

The motion of defendant Yamato Transport USA, Inc. for summary judgment is denied.

It is SO ORDERED.