**MANA PRODUCTS, INC. a/k/a Your Name Cosmetics, Inc., Plaintiff,**

v.

**COLUMBIA COSMETICS MFG., INC., Defendant.**

**No. CV–90–3027 (CBA).**

United States District Court, E.D. New York.

July 29, 1994.

Edward Kramer, Kramer & Kramer, New York City, for plaintiff.

Eugene Devany, Curtis Zaklukiewicz Vasile Devine & McElhenny, Merrick, NY, for defendant.

### MEMORANDUM & ORDER

AMON, District Judge.

#### I. *Introduction*

Plaintiff Mana Products, Inc. ("Mana") brought this action alleging that defendant sold and continues to sell cosmetics products confusingly similar to Mana's, in violation of the Lanham Act, 15 U.S.C. § 1125(a), and the New York state common law of unfair competition. Plaintiff also requests injunctive relief under the New York anti-dilution statute, N.Y.Gen.Bus.Law § 368–d (McKinney 1984). Currently before the Court is defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56(c). For the reasons that follow, the motion is granted.

#### II. *Background*

Mana develops and manufactures a line of "private label" cosmetics products known as "Your Name Cosmetics." The products are sold to beauty salons and other retailers, who affix their own labels to the products and resell them to consumers. According to the complaint, from 1979 to 1982 defendant Columbia Cosmetics Manufacturing, Inc. ("Columbia") was an authorized distributor of Mana's product line. *See* Compl. ¶ 6. Since then defendant has marketed a competing line of cosmetics products to private label resellers in the retail market. *See id.*; Aff. of Eugene P. Devany ¶ 4.

Plaintiff's complaint contained broad allegations that defendant copied both the geometric shape and color of Mana's cosmetics products and the exotic names used to describe the various shades of color included in its cosmetics kits. *See* Compl. ¶¶ 10–11. In addition, the complaint alleged that defendant used catalogs, price lists, and "client procurement materials" confusingly similar to those used by Mana. *See id.* ¶ 8. Beyond these generic accusations, however, the complaint did not detail any specific acts of copying or specific products that allegedly were infringed. Although plaintiff appended as exhibits several examples of sales materials and advertisements of Your Name products, their relevance remained unclear because none was directly referenced in the text of the complaint, and because the exhibits had no apparent correspondence with any of defendant's products. Plaintiff's briefing of the issues and efforts to supplement the record on this motion were even less informative.

More importantly, in opposing defendant's motion for summary judgment, plaintiff has evidently abandoned its earlier expansive approach. At oral argument, counsel for Mana narrowed the factual basis of plaintiff's claims to include only the similar size, shape, and color of certain powder, blush, and eye shadow compacts that comprise a portion of both parties' product lines. *See* Transcript of Oral Argument, Sept. 25, 1992 [hereinafter "Tr."], at 3. Counsel for plaintiff did not dispute the assertion of defendant's counsel that Columbia had ceased using any of Mana's color names and catalog numbers and that any conceivable infringement was "inconsequential," other than the alleged copying of the makeup compacts. Tr. 12. Plaintiff's counsel indicated that the copying of the

compacts was "the heart of [Mana's] contention here." Tr. 13. In light of these representations, the Court must treat the alleged infringement of Mana's makeup compacts as the sole remaining basis for plaintiff's claims.[1]

The only evidence submitted by plaintiff as proof of the alleged infringement consists of four photographs of its own and Columbia's compacts. *See* Pl.'s Counter-Statement Under Rule 3(g), Ex. A, B. Columbia concedes that the compacts are virtually identical in appearance and design. *See* Devany Aff. ¶ 9; Tr. 11. The photographs are in two pairs. Each photograph shows a group of eight rectangular or square plastic cosmetics cases in either open or closed position. The top of each case opens on a hinge and holds a round or rectangular hand mirror, while the bottom contains one or more similarly shaped tins of powder or eye shadow and, in most cases, a small applicator wand. All of the compacts are black, with no decorative or other distinguishing features, except that two of Mana's cases, unlike the similar cases sold by Columbia, have white tops.

### III. *Discussion*

■ Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue to be tried. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Eastman Mach. Co. v. United States,* 841 F.2d 469, 473 (2d Cir.1988). In making this determination, the Court must view the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

■ Under Rule 56, no genuine issue exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted). Moreover, the party seeking summary judgment must initially "identify[ ] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). Of particular relevance in the present case is the Supreme Court's holding in *Celotex* that summary judgment may be entered against a nonmovant who, after adequate time for discovery, fails to establish the existence of an essential element of his case on which he will bear the burden of proof at trial. *See* 477 U.S. at 322, 106 S.Ct. at 2552; *United States v. Pilot Petroleum Assocs., Inc.,* 712 F.Supp. 1077, 1081 (E.D.N.Y.1989).

### A. *Trade Dress Infringement*

■ Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), protects unregistered trademarks and trade dresses against infringement. *See Coach Leatherware Co. v. AnnTaylor, Inc.,* 933 F.2d 162, 168 (2d Cir. 1991). That section recognizes a private claim for damages against any person who "in connection with any goods ... uses in commerce any word, term, name, symbol, or device, or any combination thereof ... which ... is likely to cause confusion, or to cause mistake, or to deceive ... as to the origin, sponsorship, or approval of his or her goods ... by another person." 15 U.S.C. § 1125(a). A product's trade dress is its "overall composition and design, including size, shape, color, texture, and graphics." *Id.*

---

1. In its motion papers, defendant requests, "in the alternative," partial summary judgment against "any action based on plaintiff's European Skin Protection System." Devany Aff., ¶ 16. Any claims plaintiff may have with respect to this particular product were undeveloped in the record, and plaintiff's counsel made no mention of them at oral argument. In light of the above-cited statements by plaintiff's counsel, the Court must conclude that plaintiff has similarly withdrawn this alleged factual basis for its claims.

(citing *Stormy Clime, Ltd. v. ProGroup, Inc.*, 809 F.2d 971, 974 (2d Cir.1987)).

■ "To prevail in an action for infringement of a trademark or trade dress under Lanham Act § 43(a), a plaintiff must prove (1) that its mark is distinctive and (2) that a likelihood of confusion exists between its product and the defendant's." *Paddington Corp. v. Attiki Importers & Distribs., Inc.*, 996 F.2d 577, 582 (2d Cir.1993) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.,* —— U.S. ——, ——, 112 S.Ct. 2753, 2758, 120 L.Ed.2d 615 (1992)). Distinctiveness may be established by showing either (a) that the trade dress is "inherently distinctive" or (b) that it has acquired secondary meaning. *See Two Pesos,* —— U.S. at ——, 112 S.Ct. at 2760.

■ The Lanham Act does not protect packaging or product design that is merely functional. *See Paddington,* 996 F.2d at 582. A product's design is functional if the design is "essential" to the product's purpose. *See Essie Cosmetics, Ltd. v. Dae Do Internat'l, Ltd.,* 808 F.Supp. 952, 958 (E.D.N.Y.1992). A product's function is said to dictate its design when "(1) denying [the product's] use to others will deprive them of the ability to compete in the marketplace effectively or (2) consumer preference is so strong that 'no other shape will do.'" *Id.* (quoting *Abbott Lab. v. Mead Johnson & Co.,* 971 F.2d 6, 21 (7th Cir.1992)). Defendant bears the burden of proving functionality as a defense to plaintiff's claim of infringement. *See Le Sportsac v. K Mart Corp.,* 754 F.2d 71, 76 (2d Cir. 1985).

### a. *Inherent Distinctiveness*

■ The inherent distinctiveness of a product's trade dress should be evaluated according to the test set forth in *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir.1976), which has long been applied in this Circuit to Lanham Act § 43(a) claims involving trademarks. *See Paddington,* 996 F.2d at 583. Under the *Abercrombie* test, trade dress may be classified as either (1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary or fanciful. *See Paddington,* 996 F.2d at 583 (citing *Abercrombie,* 537 F.2d at 9). "The latter three categories of marks, because their intrinsic

nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection. In contrast, generic marks—those that 'refer[ ] to the genus of which the particular product is a species'—are not." *Two Pesos,* —— U.S. at ——, 112 S.Ct. at 2757 (quoting *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 194, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 (1985)). A "descriptive" mark will be considered distinctive only if the plaintiff demonstrates that it has also acquired secondary meaning. *Paddington,* 996 F.2d at 583 (citing *Two Pesos,* —— U.S. at —— – ——, 112 S.Ct. at 2757–58).

■ A product's distinctiveness depends upon "the total impression that the dress gives to the observer," not upon the distinctiveness of any single element in its design. *Paddington,* 996 F.2d at 584; *see also LeSportsac,* 754 F.2d at 76. Though conceding that its compacts incorporate many purely generic design elements, Mana argues that the overall combination of elements in its designs is nevertheless inherently distinctive. According to Mana, defendant could have chosen from innumerable compact types, sizes, colors, and inset and color combinations to avoid copying Mana's designs. *See* Pl.'s Counterstatement Under Rule 3(g) ¶ 9. Thus, Mana suggests that its own designs reflect a set of "arbitrary" choices worthy of protection under the Lanham Act.

■ The Court finds this argument unconvincing. Nothing about the "total impression" made upon the observer by plaintiff's compacts can fairly be described as arbitrary, fanciful, or suggestive. To be sure, some products, such as bottles and other containers, are freely recognized as inherently distinctive on the ground that "the possible varieties of advertising display and packaging are virtually endless." *Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.,* 659 F.2d 695 (5th Cir.1981) (quoted in *Paddington,* 996 F.2d at 583), *cert. denied,* 457 U.S. 1126, 102 S.Ct. 2947, 73 L.Ed.2d 1342 (1982). The makeup compacts at issue in the present case, however, draw upon a small, rudimentary vocabulary of forms which, even

in combination, do not speak audibly of the products' origin.

The size and shape of the products at issue are characteristic of the entire genre of hand-held makeup compacts. Certainly, it is difficult to imagine an "infinite variety" of meaningful alternatives that would not hamper the products' usefulness as portable makeup cases that fit in one hand. *Cf. Essie Cosmetics,* 808 F.Supp. at 958. In addition to the basic rectangular design of the compact as a whole, the arrangement of mirrors and makeup tins inside the compacts is equally nondistinctive. Plaintiff combines either a circular or rectangular mirror with a makeup tin of roughly the same shape. Nor do the colors or color combinations of plaintiff's compacts appear sufficiently unusual to produce a distinct association with Your Name Cosmetics in the minds of consumers. Finally, with respect to the color of the plastic cases, it strikes this Court as nonsensical to label the color black as arbitrary because many other options were available. Such a conclusion would be akin to according trade dress protection to a product's "plain brown wrapper," merely because it did not have to be brown.

The record also indicates that defendant does not design its own compacts or own its own design molds, but rather purchases the plastic cases for its compacts from independent manufacturers in the open market. Plaintiff directly acknowledges that "similar models of each of the components comprising the cosmetics packaging of Plaintiff can be purchased by other companies." Pl.'s Counter–Statement Under Rule 3(g), ¶ 9. The structure of the market in which the parties operate reinforces the impression that Mana's makeup compacts incorporate a set of ordinary, widely available design elements that may be found in the products of numerous private label producers. Although it might be possible to achieve a distinctive combination of those components, plaintiff has not done so here.

### b. *Secondary Meaning*

A product's trade dress has secondary meaning "when the purchasing public associates that dress with a single product or source, rather than only with the product itself." *Essie Cosmetics,* 808 F.Supp. at 958. It is not necessary for plaintiff to demonstrate that all purchasers associate the product with its producer; rather, plaintiff "need only show that a substantial segment of the relevant consumer group makes this connection." *Coach Leatherware,* 933 F.2d at 168 (citing *Centaur Communications, Ltd. v. A/S/M Communications, Inc.,* 830 F.2d 1217, 1221 (2d Cir.1987)). Factors relevant to the determination of secondary meaning include: (1) plaintiff's advertising expenditures; (2) consumer surveys linking the trade dress to a particular source; (3) sales success; (4) unsolicited media coverage; (5) attempts to plagiarize the trade dress; and (6) the length and exclusivity of the use. *George Basch Co., Inc. v. Blue Coral, Inc.,* 968 F.2d 1532, 1536 (2d Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 510, 121 L.Ed.2d 445 (1992).

There is no merit to defendant's initial objection that private label cosmetics products in general cannot acquire secondary meaning. Defendant argues that, because purchasers of such products affix their own brand labels before reselling them, individual retail consumers do not even know the names of the original producers. However, "it is not always the *general* public's understanding but—depending upon the product—often only a segment of consumers that need be examined." *Centaur Communications,* 830 F.2d at 1221. It is undisputed that plaintiff sells its products exclusively in the wholesale market to private label resellers. *Cf. Essie,* 808 F.Supp. at 959 (noting that class of consumers is narrower where private label producer does not compete with its own products in retail market). Accordingly, private label resellers who buy cosmetics products in the wholesale market comprise the relevant group of consumers in analyzing the secondary meaning of Your Name makeup compacts. *See id.* Plaintiff need only show that a "substantial segment" of that group "made the requisite association between the product and the producer." *Centaur Communications,* 830 F.2d at 1222.

As evidence of secondary meaning, plaintiff has submitted a single affidavit from a boutique owner who purchased private la-

bel cosmetics at trade shows in which both plaintiff and defendant participated. *See* Aff. of Jane Rosen, ¶¶ 1–2. The affidavit states that, while attending the Midwest Beauty Show in February, 1992, Rosen "passed by the Your Name booth and became very confused." *Id.* ¶ 3. Rosen had extensive prior experience with Columbia's product line. *See id.* When she saw the Your Name Cosmetics booth, she "immediately thought that Your Name must be related to Columbia, for not only did the products seem the same, but were displayed in the same manner, as well." *Id.* Plaintiff also asserts in its complaint that Mana has spent over $3 million in advertising its products. *See* Compl. ¶ 5. Plaintiff provides neither consumer surveys nor any information about the relative market share of the Your Name line, unsolicited media coverage, or the length of time that the Your Name compacts made exclusive use of the contested design.

■ This showing clearly fails to raise a genuine issue of material fact as to the existence of secondary meaning. *Cf. Coach Leatherware*, 933 F.2d at 169 (noting "vigorous evidentiary requirements" for proof of secondary meaning). Plaintiff's vague allegation about its gross advertising budget is minimally probative of secondary meaning. *See McGregor–Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1133 n. 4 (2d Cir.1979). Moreover, the Rosen affidavit actually undercuts plaintiff's claim. The affidavit indicates that Rosen's primary identification of plaintiff's products was with the *Columbia* name. Although this assertion may suggest some potential likelihood of confusion concerning the source of the parties' products, it does nothing to establish the secondary meaning of Your Name Cosmetics. Certainly, it is insufficient to show that a "substantial segment" of private label cosmetics purchasers associated plaintiff's products with their maker. *See Centaur Communications*, 830 F.2d at 1221.

Finally, it should be noted that the deficiencies of plaintiff's showing as to secondary meaning clearly distinguish this case from *Essie Cosmetics*. In *Essie Cosmetics*, the court granted a preliminary injunction prohibiting the defendant from marketing sim-

ple, unadorned fingernail polish bottles virtually identical to Essie's. *See* 808 F.Supp. at 959–60. The court concluded that, despite the absence of ornament in the bottles' design, their very simplicity could "speak[ ] of origin without explicit attribution." *Id.* at 957. In contrast to the present case, however, Essie submitted compelling evidence of the secondary meaning of the company's " 'square, labelless little bottle.' " *Id.* at 955 (quoting "How to Polish Your Act," Mademoiselle, March 1991, at 78). Thus, the question in *Essie Cosmetics* was not whether the plaintiff's bottles were inherently distinctive, but rather the validity of the defendant's functionality defense. The court found only that Essie's bottles were not so functional as to exclude them from protection under the Lanham Act. *See id.* at 958.

■ Here, it is unnecessary to address defendant's alternative defense of functionality, because plaintiff has failed to raise a genuine issue on the threshold question of the compacts' inherent distinctiveness or their acquisition of secondary meaning in the marketplace. Similarly, since plaintiff's compacts are not entitled to trade dress protection under the distinctiveness prong of § 43(a), the Court need not consider whether any likelihood of confusion exists between plaintiff's and defendant's products. Having failed to satisfy an essential prerequisite for trade dress protection under § 43(a), summary judgment must be granted in favor of defendant on plaintiff's Lanham Act claim.

### B. State Law Claims

#### 1. Common Law Unfair Competition

■ Plaintiff also seeks damages and injunctive relief pursuant to the New York common law of unfair competition. New York law recognizes a claim of unfair competition for "palming off" goods as those of another. *Kraft Gen. Foods, Inc. v. Allied Old English, Inc.*, 831 F.Supp. 123, 135 (S.D.N.Y.1993). " '[T]he essence of unfair competition under New York common law is "the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods." ' " *Id.* (quoting *Rosenfeld v. W.B. Saunders, a Div. of Harcourt*

*Brace Jovanovich, Inc.*, 728 F.Supp. 236, 249–50 (S.D.N.Y.)), *aff'd*, 923 F.2d 845 (2d Cir.1990). A showing of secondary meaning is not required when a likelihood of confusion is shown to result from practices, such as "palming off, actual deception, [and] appropriation of another's property," which are "imbued with an odor of bad faith." *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 138 (2d Cir.1992). Thus, New York law gives "true innovators ... adequate recourse against free-riders." *Id.* at 139.

 Plaintiff has failed to raise a genuine issue of confusion resulting from bad faith, at least on the record presented here. The Rosen affidavit suggests that a single buyer may have been confused about the source of Your Name products, but her primary familiarity with *defendant's* goods militates against any inference of palming off or intentional deception. The unusual dearth of evidence of secondary meaning in this case further undermines plaintiff's allegations of bad faith. The physical similarity of the parties' makeup compacts alone does not constitute sufficient evidence to withstand defendant's motion for summary judgment. The motion must therefore be granted with respect to plaintiff's common law unfair competition claim.

### 2. *The New York Anti–Dilution Statute*

Finally, plaintiff requests injunctive relief under the New York "anti-dilution" statute, New York Gen.Bus.Law § 368–d (McKinney 1984). That statute states:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

New York Gen.Bus.Law § 368–d. Neither competition between the parties nor a likelihood of confusion about the source of products is necessary to state a claim for dilution. *See Sally Gee, Inc. v. Myra Hogan, Inc.*, 699 F.2d 621, 624 (2d Cir.1983).

It is well-established, however, that "'only those trade names which are truly of *distinctive* quality or which have acquired a secondary meaning in the mind of the public should be entitled to protection under the anti-dilution statute.'" *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1049 (2d Cir.1992) (quoting *Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.*, 42 N.Y.2d 538, 546, 369 N.E.2d 1162, 1166, 399 N.Y.S.2d 628, 633 (1977)). Thus, section 368–d "protects only extremely strong marks." *Sally Gee*, 699 F.2d at 625. In light of the above discussion, it is evident that summary judgment must also be granted in defendant's favor on plaintiff's claim under section 368–d.

### Conclusion

For the reasons discussed above, defendant's motion for summary judgment is hereby granted in its entirety. Defendant's perfunctory request for sanctions pursuant to Fed.R.Civ.P. 11 is denied.

SO ORDERED.